## In re MacKISSIC.

### (District Court, E. D. Pennsylvania. July 2, 1909.)

### No. 3,216.

**1. Bankruptcy (§ 228*)—Referee's Finding—Conflicting Evidence.**

A referee's finding, based on conflicting evidence, that certain collateral was pledged for specific debts, and not for all the bankrupt's indebtedness to the pledgee, will not be set aside by the District Judge on certificate of the referee.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 228.*]

**2. Bankruptcy (§ 400*)—Exemption—Jurisdiction.**

A court of bankruptcy has no jurisdiction over a debtor's exemption, except to set it aside.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 400.*]

**3. Bankruptcy (§ 147*)—Judgment—Judgment Lien—Exemptions—Jurisdiction.**

Two judgments against a bankrupt contained waivers of the debtor's exemption, and were liens on real estate which was sold for enough to pay the exemption and also the full amount due the judgment creditors. The bankrupt elected to take out of the real estate, and was entitled to $300 out of the proceeds of a sale thereof, and this amount, coming into the hands of a trustee, was attached by the judgment creditor in the state court to satisfy in part the uncollected balance due thereon. *Held,* that the trustee held the amount of such exemption as an individual, and not as a trustee, the fund being subject to the exclusive jurisdiction of the state court, independent of the bankruptcy proceeding; and hence its attachment did not justify the trustee in deducting that amount from the sum which would otherwise have been paid to the holder of the judgments in a bankruptcy proceeding.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 147.*]

**4. Bankruptcy (§ 399*)—Waiver of Exemptions.**

Where a bankrupt elected to take his exemption out of the proceeds of a sale of real estate, the amount thereof while in the hands of the trustee was subject to seizure under a judgment containing a waiver of exemption.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 399.*]

In Bankruptcy.

Thomas K. Leidy and William P. Young, for claimant.
Christian H. Ruhl and Stephen M. Meredith, for trustee.

J. B. McPHERSON, District Judge. In this estate there are two certificates from the referee, and each may properly call for a few words in explanation of the court's decision. The first certificate has to do with the amount to which a creditor was entitled as a secured debt, and may be briefly disposed of by saying that the

---

sum due was to be determined from conflicting evidence, and that no sufficient reason appears for rejecting the referee's finding. The claimant, Jacob H. Brendlinger, had two valid judgments aggregating $1,400. But they were admittedly given as collateral security, and the only question was what class or classes of debts they were intended to cover. The claimant's position was that they were intended to be collateral for all the bankrupt's indebtedness to him, past, present, and future, while the bankrupt testified that they were only to secure specific debts that were in existence at the time when the judgments were confessed. The referee accepted the bankrupt's testimony as correct, and upon that assumption the amount awarded to the claimant as a secured debt should not be disturbed.

The order of February 19, 1909, is therefore affirmed.

The second certificate raises a different question. Both these judgments contain waivers of the debtor's exemption, and were liens upon real estate that was sold for enough money to pay the exemption and also the full amount due to the judgment creditor. If, therefore, the District Court had complete jurisdiction over the bankrupt's exemption, it would have been necessary to disregard the exemption in making distribution (since the bankrupt had waived his privilege in favor of Brendlinger) and to apply the whole of the exemption fund, if necessary, to the payment of the two liens. But, as is well known, the bankruptcy court has no jurisdiction over a debtor's exemption, except to set it aside, and nothing else was done in the present case. The bankrupt elected to take out of the real estate, and under the Pennsylvania practice he was entitled to $300 out of the proceeds of sale, as the realty could not be divided so as to satisfy his claim in kind. This amount came into the hands of the trustee, and was thereupon attached by Brendlinger as the holder of the two judgments above referred to, in order to satisfy in part the uncollected balance due upon these debts. The attachment execution was issued out of the court of common pleas of Berks county, where the two judgments had been entered of record. For some reason that does not clearly appear the referee regarded this attachment execution as at least likely to result in collecting $300 of the balance due upon the judgments, and deducted that sum from the amount that he would otherwise have awarded to Brendlinger, directing the trustee, however, to hold it until the result of the attachment should be known. Upon what theory this order was made I have not been informed, but I do not see how it can be sustained. The principles that govern the marshaling of assets do not apply. Only one fund was before the referee for distribution, namely, the net proceeds of the real estate after the exemption had been deducted, and the claimant was clearly entitled to a definite sum out of those proceeds. The fact that the trustee was in possession of another fund, in which the bankrupt had an interest, had no bearing on the claimant's right to recover the full amount of his award. The referee had no jurisdiction to distribute this second fund, and no right to determine who was entitled to receive it. The fact that it also was in the hands of the trustee was a mere accident. He did not hold it as trustee, but

as an individual, and the money was as clearly liable to attachment in his hands as the land would have been liable to seizure under execution issued upon the claimant's judgments, if the exemption had been set apart in kind. In the latter event it would scarcely have been asserted that the claimant would have been obliged to give up his claim upon the land thus set apart, unless he would deduct its value from the sum awarded to him out of the remaining portion of the debtor's realty. The fund of $300 was subject to the exclusive jurisdiction of the state court, and, if the bankrupt's creditors think that they have a claim to subrogation upon that fund growing out of the fact that Brendlinger has been paid in part out of the fund distributed by the referee, they should make their contention before the common pleas. Certainly the referee had no authority to determine what should become of the $300, or to decide that if Brendlinger had successfully attached it he must give up a like amount out of the fund before the referee.

The order of February 20, 1909, is therefore modified, so as to require the trustee to pay over to the claimant, Jacob Brendlinger, the full amount awarded to him out of the proceeds of the bankrupt's real estate.