Campbell and others, Respondents, vs. Mickelson and wife, Appellants.

*March 15—April 12, 1938.*

For the appellants there was a brief by *Lee & Boesel,* and oral argument by *John P. Boesel* and *Vincent S. Reilly,* all of Madison.

For the respondents there was a brief by *Gibbon & Hamilton* and *George J. Larkin,* all of Dodgeville, and oral argument by *Mr. Larkin* and *Mr. Frank D. Hamilton.*

ROSENBERRY, C. J. From the finding quoted, which is the only finding of fact made in regard to the fraudulent character of the conveyance, it is impossible to tell upon what ground the trial court proceeded. Each of the defendants testified to the $1,200 transaction in 1916. There was no contradiction of this evidence except such as might be inferred from the circumstances. The trial court does not find that the loan was not made. The trial court may have been of the view that the loan having been made in 1916, no precise time having been agreed upon for repayment, it was payable on demand, and therefore action upon it was barred by the statute of limitations, and for that reason the debt was extinguished. (See *Banking Comm. v. Buchanan, post,* p. 544, 279 N. W. 71.) There was nothing inherently incredible in the testimony of the defendants. Immediately after the making of the loan they entered upon extensive

farming operations and were apparently for some years quite successful. The only testimony offered upon this point was by way of the depositions of the defendants taken before the trial as adverse parties. The defendants were not examined by their own counsel upon the trial or otherwise.

The state of the record convinces us that the controversy has never been fully tried, and for that reason the judgment will be reversed and the cause remanded for a new trial upon all of the issues made by the pleadings. For that reason we shall not discuss the facts further.

Because there must be a new trial, we shall determine the question in regard to the application of the exemption statute, sec. 272.18 (6), as amended in 1935. All of the obligations of the defendants were incurred prior to the enactment of that statute (ch. 146, Laws of 1935). That amendment increases a debtor's exemptions as follows:

Cows increased from two to eight, added the necessary food for one year's support of the eight cows, added one binder, added one corn binder, added one mower, added one spring-tooth harrow, added one disk harrow, added one seeder, added one hay loader, added one corn planter, added one set of heavy harness, increased other farming utensils from $200 in value to $300 in value.

The defendant Thomas was awarded exemptions amounting in value to $1,298.25. If he is entitled to a claim in accordance with the amendment of 1935, he would be entitled to an additional sum of $897.25. This is certainly a substantial and material increase, and the question is whether the statute, if applied to debts created prior to its enactment, impairs the obligation of plaintiffs' contract. The matter has been considered so recently by the supreme court of the United States that we find it unnecessary to review the cases, inasmuch as the decisions of that court are controlling. In *W. B. Worthen Co. v. Thomas* (1934), 292

U. S. 426, 54 Sup. Ct. 816, 78 L. Ed. 1344, the court reconsidered the question. Under the doctrine of that case and the cases cited in a note to it "Debtor's exemption statutes as impairing obligations of existing contracts," 93 A. L. R. 177, we hold that the trial court correctly determined the amount of the exemptions to which the defendants were entitled. That determination was made in accordance with the statutes as they existed prior to the amendment of 1935.

One other question remains for consideration, and that is, whether or not the debt of the husband to the wife was barred by the statute of limitations. In *Brader v. Brader* (1901), 110 Wis. 423, 85 N. W. 681, this court recognized that the statute itself created no exception in favor of the wife. It was also said that a different view was taken than in *Second Nat. Bank v. Merrill* (1891), 81 Wis. 151, 50 N. W. 505, which was followed by *Fawcett v. Fawcett* (1893), 85 Wis. 332, 55 N. W. 405. The court said (*Brader v. Brader* (1901), 110 Wis. 423, 426, 85 N. W. 681):

"We do not find that the citations support the rule, but it is now ten years since it was definitely laid down as a judicial declaration of the force and effect of our statutes. During that time most valuable rights may have reached such age that their destruction would result from a change of that rule, and property rights of great magnitude may have grown up in reliance upon it. The fact that the community, doubtless upon the advice of the profession, have relied on the immunity of married women from the bar of statutes of limitation is confirmed by the fact that a suit with reference to an ordinary money demand by wife against husband has seldom been known in this court, numerous as are the transactions out of which such suits might grow. We feel constrained, therefore, without yielding assent to the reason of the rule of *Second Nat. Bank v. Merrill,* to decline now to depart from it. If it is not such as the legislature believes best, a change by that body is easy, and that, too, in a way to take effect *in futuro* and not *ex post facto.*"

There has been no change in the statutory law upon the subject unless it was introduced by sec. 6.015, Stats., which provides:

"Women shall have the same rights and privileges under the law as men in the exercise of suffrage, freedom of contract, choice of residence for voting purposes, jury service, holding office, holding and conveying property, care and custody of children and in all other respects. The various courts, executive and administrative officers shall construe the statutes where the masculine gender is used to include the feminine gender unless such construction will deny to females the special protection and privileges which they now enjoy for the general welfare."

This statute has been considered in *First Wis. Nat. Bank v. Jahn* (1922), 179 Wis. 117, 190 N. W. 822; *Wait v. Pierce* (1926), 191 Wis. 202, 209 N. W. 475, 210 N. W. 822; *Sparks v. Kuss* (1928), 195 Wis. 378, 216 N. W. 929, 218 N. W. 208; *Fontaine v. Fontaine* (1931), 205 Wis. 570, 238 N. W. 410; *Estate of Nitka* (1932), 208 Wis. 181, 242 N. W. 504. The court in these cases has applied the statute to carry out the evident legislative purpose. The question is whether it operates in any way to affect the question under consideration here. It is considered that it does not for the following reasons: In this state a married woman, prior to the enactment of sec. 6.015, Stats., might maintain an action against her husband with reference to her separate estate. She could have maintained such an action at the time *First Wis. Nat. Bank v. Jahn* was decided. Therefore sec. 6.015 has in no way altered the relation of the defendants to each other with respect to the loan made in 1916. The rights of the defendant Alma to maintain an action against her husband Thomas have not been enlarged and no disability with reference thereto has been removed by the enactment of that statute. While we concur with what was said in *Brader v. Brader, supra,* with respect to the rea-

sons for the decision in *Second Nat. Bank v. Merrill,* inasmuch as that case has been the law of this state since 1891, and the legislature, although the matter has been called to its attention, has declined to modify the statute so as to destroy the exception, it has become a rule of property from which this court should not depart. *Milwaukee v. State* (1927), 193 Wis. 423, 214 N. W. 820; 2 Callaghan's Wis. Dig., Courts, § 96, and cases cited.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.