**STEIN v. BOSTIAN et al. (two cases).**
**Nos. 12213, 12246.**

Circuit Court of Appeals, Eighth Circuit.
Feb. 25, 1943.

Phineas Rosenberg, of Kansas City, Mo., for appellant.

Warren S. Earhart and Roy B. Cunningham, both of Kansas City, Mo., for appellees.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

The question for decision is whether the court of bankruptcy could subject a cash exemption, to which the bankrupt was entitled under the laws of Missouri, to the payment of claims for taxes filed by that State and by the City of Kansas City.

The facts are stipulated. Sigmund Stein, a merchant of Kansas City, Missouri, and the head of a family, was adjudicated a bankrupt February 17, 1941, upon an involuntary petition. On that day he filed his schedules showing his liabilities, among which were taxes aggregating $530, and his assets which consisted of his stock in trade, fixtures and accounts receivable. In his schedules the bankrupt made the following claim for exemptions: "I claim as exempt under and by virtue of Article 19, Chapter 5 of the Revised Statutes of Missouri, 1929 [Art. 19, Ch. 6, Revised Statutes of Missouri, 1939, Mo.R.S.A. § 1316 et seq.], all of my household goods, wearing apparel, furniture, household stores, and ornaments of myself and family heretofore scheduled, as well as all other personal property heretofore scheduled herein, all of them not exceeding in value the amount allowed me by law or the sum of $400."

William B. Bostian was appointed receiver on February 17, 1941, and on February 18, without notice to the bankrupt, he procured from the referee in bankruptcy an order to sell the bankrupt's merchandise and fixtures free of liens. The sale was at public auction, and the highest bid received was $710 for the merchandise and fixtures together, and they were sold for that amount. Prior to the sale, the referee had mailed notice thereof to the bankrupt, who did not appear and object. The sale was confirmed on February 26, 1941. The bankrupt did not waive his exemption rights or stipulate them away.

At the first meeting of creditors, held on March 10, 1941, William B. Bostian was elected trustee. On March 12, 1941, he filed a report of exemptions, specifying as exempt:

"Household goods and furniture
Wearing apparel if unencumbered and if encumbered the equity therein
Household stores."

The attorney for the bankrupt objected to the failure of the trustee to "set off merchandise or cash equivalent as exempt, and as claimed in bankrupt's schedules." On April 29, 1941, the trustee filed a supplemental report of exemptions, specifying as exempt: "Cash $300 (Subject to costs of administration and claims adjudged prior to cash exemptions by the Bankruptcy Court)."

No creditor of the bankrupt filed exceptions to or challenged in any way the trustee's reports of exemptions. The bankrupt filed exceptions to so much of the trustee's supplemental report as sought to subordinate his cash exemption to costs of administration and claims adjudged prior to such exemption.

The tax claims filed against the estate of the bankrupt were as follows: State of Missouri, $191.05; Jackson County, Missouri, $71.93; City of Kansas City, Missouri, $267.02. None of these tax claimants had levied upon or seized or sold any part of the assets for taxes or commenced any

proceedings for that purpose or for establishing a lien thereon.

The referee on July 9, 1941, issued an order directing the bankrupt and the tax claimants to show cause why the referee "should not make either an order allowing the payment by the trustee in bankruptcy of $300.00 as cash exemptions out of the proceeds of the sale of the assets of this estate, or an order that the bankrupt is not entitled to such cash exemptions as against said tax claims or rights of the trustee in bankruptcy."

After a hearing, the referee decided that the court of bankruptcy had jurisdiction to determine the controversy between the bankrupt and the tax claimants over the $300 cash exemption conditionally set off to the bankrupt; that the tax claimants, State of Missouri and Kansas City, Missouri, had rights superior to those of the bankrupt in the $300 exemption; that it should be equitably divided between these two tax creditors; and that Jackson County, Missouri, "having defaulted", had forfeited its right to participate in a distribution of the bankrupt's exemption. The bankrupt petitioned for a review of the referee's order directing the application of the exemption to the payment of the tax claims. The District Court affirmed the referee, and the bankrupt appealed.[1]

The effect of what the court of bankruptcy did was to set off to tax creditors the cash exemption to which the bankrupt was entitled.

The trustee contends that the Bankruptcy Act confers jurisdiction on the courts of bankruptcy to determine all claims to exemptions of bankrupts; that the object and effect of the Missouri statutes is to abolish exemptions as against taxes due the State and its subdivisions; and that when an exemption is set apart in cash, the court of bankruptcy may order it applied to the claims of creditors against whom the bankrupt can not claim exemptions. The trustee does not contend that the exemption is subject to costs of administration.

The statutes of Missouri providing that certain property "owned by the head of a family, shall be exempt from attachment and execution," are Sections 1324 and 1327, Revised Statutes of Missouri, 1939, Mo.R.S.A. §§ 1324, 1327. Section 1330 of the same Statutes provides: "Sec. 1330. Nothing contained in this article shall be construed so as to exempt any property from seizure and sale for the payment of taxes due this state, or any city, town or county thereof."

Thus, while exempt property in Missouri is not subject to attachment and execution, it is subject to seizure and sale for taxes due the State or its subdivisions. It is agreed, however, that none of the property of the bankrupt had been seized or sold for taxes or that any lien for taxes had been established thereon. The right to an exemption under Missouri law is not made to depend upon the payment of taxes, nor is the amount of the exemption determined by deducting the amount of the debtor's liability for taxes.[2]

The question presented is, in our opinion, so well settled that we shall not indulge in a discussion of the pertinent provisions of the Bankruptcy Act[3] or a review of the cases construing those provisions.

---

[1] The bankrupt, not being certain whether he could appeal as of right or whether this court must allow his appeal, gave notice of appeal and also procured from this court an order allowing his appeal. That is why this case is captioned as though it involved two appeals. Hereafter, we think that appeals so taken should be treated as a single appeal and not as two separate appeals as has been done in the past.

[2] In Missouri, taxes are not by statute made a lien on personal property, exempt or unexempt. See: State ex rel. Davis v. Goodnow, 80 Mo. 271, 275; State, to Use of Phillips v. Rowse, 49 Mo. 586, 592; City of Carondelet v. Picot, 38 Mo. 125, 130; Greeley v. Provident Sav. Bank, 98 Mo. 458, 460, 11 S. W. 980. Personal property may be seized and sold for taxes "in the same manner as goods and chattels are or may be required to be seized and sold under execution issued on judgments at law," and after demand and notice. § 11086, R.S.Mo.1939, Mo.R.S.A. § 11086. Personal taxes are a debt to be collected only in the manner authorized by statute. National Lumber & Creosoting Co. v. Burrows, Mo.App., 284 S.W. 153, 154, and may be presented against the estates of insolvent debtors in the same manner as other indebtedness. State ex rel. and to Use of Graves v. Farmers' Trust Co. of Macon, Mo.Sup., 31 S.W.2d 1069, 1070.

[3] Sec. 24, Title 11 U.S.C.A. "This title shall not affect the allowance to bankrupts of the exemptions which are prescribed by the laws of the United States or by the State laws in force at the time of the filing of the petition * * * *." Sec. 75, sub. a (6), Title 11 U.S.C.A.

■ The exempt property to which a bankrupt is entitled is no part of his estate in bankruptcy, is not subject to administration by the court of bankruptcy, and the title to such property does not pass to the trustee, but remains in the bankrupt. Lockwood v. Exchange Bank, 190 U.S. 294, 299, 300, 23 S.Ct. 751, 47 L.Ed. 1061. The authority of the court of bankruptcy to determine claims of bankrupts to their exemptions is "to control exempt property in order to set it aside, and thus exclude it from the assets of the bankrupt estate to be administered." Lockwood v. Exchange Bank, supra [p. 299 of 190 U.S., 23 S.Ct. at page 753, 47 L.Ed. 1061]. See also, Smalley v. Laugenour, 196 U.S. 93, 97, 98, 25 S.Ct. 216, 49 L.Ed. 400; Lucius v. Cawthon-Coleman Co., 196 U.S. 149, 151, 25 S.Ct. 214, 49 L.Ed. 425. If creditors of a bankrupt assert that property, while exempt generally, is not exempt from process to enforce their particular debts, they must resort to courts other than the court of bankruptcy to enforce payment out of such property. Duffy v. Tegeler, 8 Cir., 19 F.2d 305, 308. Compare, Hukill-Hunter Co. v. Oliver, 3 Cir., 43 F.2d 100.

It may be true, as the referee points out, that the cash exemption set off to the bankrupt can be reached by his tax creditors through other proceedings, and that it would be convenient, expeditious and economical to have the court of bankruptcy order that the exemption be applied to the payment of the tax claims. That, however, does not alter the fact that Congress has not conferred upon the courts of bankruptcy jurisdiction to administer the exempt property of a bankrupt when a claim for exemptions has been filed, or to treat such property as any part of a bankrupt's estate.

■ The fact that, prior to the appointment of a trustee, the property of the bankrupt was converted into cash and that he did not protest against the sale, is immaterial. He claimed his exemptions in his schedules, and it is conceded that he did not waive his right to his exemptions or stipulate it away. It was the duty of the trustee and of the court to safeguard the right of the bankrupt to his exempt property. That right was, under the plainest principles of equity and fair dealing, transferred, without impairment, to the proceeds of the sale. Smith v. Thompson, 8 Cir., 213 F. 335, 336; In re Miller, 7 Cir., 95 F.2d 441, 443; In re Kane, 7 Cir., 127 F. 552, 554; Bank of Nez Perce v. Pindel, 9 Cir., 193 F. 917, 922. Compare, Steele v. Leonori, 28 Mo.App. 675, 683; State, to Use of Codding v. Finn, 8 Mo.App. 261, 264; Marchildon v. O'Hara, 52 Mo. App. 523, 526, 527.

It is evident that both the referee and the District Court thought that the decision of the Supreme Court of Missouri in the case of United States ex rel. First Nat. Bank v. Lufcy, 329 Mo. 1224, 49 S.W.2d 8, sanctioned the action taken in this case. That case is not controlling and is clearly distinguishable. In the Lufcy case the court ruled that the bankrupt had consented to the sale of his exempt homestead upon condition that out of the proceeds liens of creditors upon it should be paid, and that his right to an exemption should be transferred to the proceeds, if any, in excess of such liens. In the case at bar there were no liens on the exempt cash and no consent by the bankrupt that tax creditors should be paid out of his exemptions.

■ The order appealed from is reversed, and the case is remanded, with directions to allow the bankrupt his cash exemption unconditionally.

---

"Trustees shall * * * (6) set apart the bankrupts' exemptions allowed by law, if claimed, and report the items and estimated value thereof to the courts as soon as practicable after their appointment."

Sec. 110, Title 11 U.S.C.A. "The trustee of the estate of a bankrupt * * * shall * * * be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition in bankruptcy * * * except insofar as it is to property which is held to be exempt, * * *."

Sec. 11, sub. a (11), Title 11 U.S.C.A., gives to the courts of bankruptcy jurisdiction to "determine all claims of bankrupts to their exemptions."